Betty L. DUCKWORTH Plaintiff

v.

SAKS, INCORPORATED, PROF-
FITT'S, INC. and MCRAE'S
INC. Defendants

No. CIV.A. 4:01CV341LN.

United States District Court,
S.D. Mississippi,
Jackson Division,
Eastern Division.

March 20, 2003.

Henry W. Palmer, Lawyers, PLLC, Meridian, for Plaintiff or Petitioner.

Roy A. Smith, Jr.,Terry Dwayne Little, Daniel, Coker, Horton & Bell, Jackson, for Defendant or Respondent.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Saks, Incorporated, Proffitt's, Inc., and McRae's, Inc. for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Betty L. Duckworth has responded in opposition to the motion. The court, considering the memoranda and submissions of the parties, as well as other pertinent authorities, concludes that defendants' motion for summary judgment is well taken and should be granted.

Plaintiff Duckworth was employed at the McRae's of Alabama in 1986 when she learned from co-workers of a new voluntary "long-term disability" benefit plan which her employer was offering through Paul Revere Life Insurance Company. Duckworth decided to procure the insurance and promptly filled out a payroll deduction form, which she obtained from her supervisor.[1]

The payroll deduction form Duckworth executed was a one-page document with three sections. The "summary of benefits" section expressly stated, *inter alia,* that Duckworth would receive 60% of her monthly earnings in the event of a disability, up to a maximum of $5000 monthly. The "summary of costs" section identified Duckworth as a participant, listed her effective date of coverage as 07/01/96, and reflected a projected monthly benefit $936, for a weekly cost of $7.02, which was to be deducted from Duckworth's paycheck. That same "summary of costs" section included the following:

> This is a brief description of company endorsed Voluntary Long Term Disability program for employees. *Basic limitations and exclusions are outlined on the attached sheet. Complete terms including limitations and exclusions are found in the group insurance policy*

---

1. The court notes that the employees who told plaintiff about the disability coverage (one of whom was her supervisor) did not have any involvement with McRae's Human Resources Department.

*issued to you* by the Paul Revere Life Insurance Company.

(Emphasis added).

The final section of the form, which was the "Application," recited as follows:

I am an active full-time associate. I regularly work at least 30 hrs per week for my company the [sic] their usual place of business. I have read and understand this application form and request voluntary insurance in accordance with the terms of the group insurance policy issued to Proffitts, Inc. I authorize the deduction from my pay of the cost of this insurance.

Although Duckworth signed the form, she claims there was no "attached sheet" detailing limitations and exclusions, and asserts further that she never received a copy of the insurance policy. Duckworth never investigated further to find out what exclusions were applicable to her policy.

The dispute before the court arose after Duckworth became completely disabled from a personal illness in February of 2000. When Duckworth sought benefits under the policy, UNUM[2] initially paid $732.18 (60% of her salary) per month under reservation of rights. However, UNUM later learned that Duckworth was also receiving social security benefits and, in accordance with an alleged offset, or coordination of benefits provision in the policy, reduced the amount of benefits payable to Duckworth to $100 per month.

Duckworth, who alleges she was unaware of any offset provision in the policy, filed suit in state court against the defendants[3] seeking compensatory and punitive damages based on state law claims of negligence, breach of fiduciary duty and breach of the duty of good faith and fair dealing. Defendants removed the case pursuant to 28 U.S.C. § 1331, following which they answered the complaint and filed the present motion for summary judgment. In their motion, defendants first argue that plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* Plaintiff does not dispute that the plan at issue is an ERISA plan. She contends, however, that her claims are not preempted by ERISA since she is not suing the plan or plan administrator under the policy, nor will any judgment come out of plan assets, but instead has filed the action against her former employer for its own negligence under state law in failing to disclose critical provisions of the policy.

▬ Section 514(a) of ERISA provides that, with certain exceptions, ERISA preempts any and all State laws insofar as they *relate* to employee benefit plans. *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 244 (5th Cir.1990) (citing 29 U.S.C. § 1144(a) (1994)) (emphasis added). In this regard, "the words 'relate to' are to be given their 'broad common-sense meaning,'" *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1219 (5th Cir.1992) (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985)), and the state law in question will be preempted if it has a connection with or reference to such a plan. *Id.* (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899–2901, 77 L.Ed.2d 490 (1983)).

▬ Specifically, Section 1144(a) preempts a state law cause of action when two elements are present: "1) the state law claims address areas of exclusive fed-

**2.** It appears that at some point after issuance of the policy, Paul Revere was purchased by UNUM Provident Life Insurance Company (UNUM).

**3.** Duckworth was employed by McRae's, which was owned by Proffitt's, which in the late 1990s, merged with Sak's. Plaintiff has named all three entities as defendants.

eral concern, such as the right to receive benefits under the terms of an ERISA plan; and, 2) the claims directly affect the relationship between the traditional ERISA entities, i.e., the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hollis v. Provident Life and Acc. Ins. Co.*, 259 F.3d 410, 414 (5th Cir.2001).

With this in mind, it is first apparent to the court that Duckworth's state law causes of action address areas of exclusive federal concern. It matters not that Duckworth did not bring her state law causes of action against the plan or plan administrator but instead sued the employer for allegedly distinct claims. Indeed, "this type of end run [around ERISA preemption] is regularly rebuffed," *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992), and indeed has been expressly rejected both by the Fifth Circuit, *see Cefalu*, 871 F.2d at 1294, and by this court, *see Goodman v. S. & A. Restaurant Corp.*, 756 F.Supp. 966, 968–69 (S.D.Miss.1990) (rejecting the plaintiff's contention that since she was not seeking recovery from the plan or its assets but was only seeking damages from the employer, preemption was unwarranted). In *Cefalu*, the court found that an employee's state law claims against an employer were preempted by ERISA and noted that,

> Appellant's claim has a definite connection to an employee benefit plan. Plaintiff concedes that if he is successful in this suit his damages would consist of the pension benefits he would have received had he been employed by TCI. To compute these damages, the Court must refer to the pension plan under which appellant was covered when he

worked for Goodrich. Thus, the precise damages and benefits which appellant seeks are created by the Goodrich employee benefit plan. To use any other source as a measure of damages would force the Court to speculate on the amount of damages.

*Id.* In this action, Duckworth claims she is "entitled to 80% of her salary without coordination until age sixty-five from date of entitlement...." Accordingly, as she measures her damages by reference to the amount of benefits she would have received had the plan not contained the coordination of benefits provision, her state law claims have a clear connection to the plan.

Duckworth's claims also directly affect the relationship among the traditional ERISA entities. Duckworth is a "participant" in the benefit plan as that term is defined in 29 U.S.C. § 1002(7), and defendants were her "employer" under § 1002(5). Moreover, the claims in this action, which are based on the alleged negligent withholding of information, directly implicate whether the employer owed responsibilities to the participants of the plan as a fiduciary and, if so, whether those duties were breached. The court therefore concludes that plaintiff's state law claims are preempted.

■ However, the conclusion that Duckworth's state law claims are preempted does not end the matter, for upon concluding that putative state law claims are preempted by ERISA, the court's charge is to recharacterize those claims as arising under ERISA.[4] *Williams v. Jackson Stone Co.*, 867 F.Supp. 454, 459 (S.D.Miss. 1994) (citing *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir.1989) (preemptive

---

4. Duckworth has claimed that this action was appropriate under state law from the beginning. Accordingly, it is not clear if the action is ripe for adjudication under ERISA due to the requirement that the plaintiff exhaust her administrative remedies. However, since Duckworth has no viable claim under ERISA, the court, for the purpose of its analysis, assumes that all formal prerequisites for plaintiff's action have been satisfied.

effect of ERISA effectively recharacterizes state law claims into actions arising under federal law)). Under ERISA's § 1132(a)(3) catch-all provision, a civil action may be brought by a participant against a putative fiduciary for benefits the participant would be entitled to but for a breach of fiduciary duties. *Id.* at 461–62; *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 109 (1st Cir.2002). As defined by ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any *discretionary* authority or *discretionary* control respecting management of such plan or exercises any authority or control respecting the management or disposition of its assets, . . . or (ii) he has any *discretionary* authority or *discretionary* responsibility in the administration of such plan." *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir.2002) (citing 29 U.S.C. § 1002(21)(A)) (emphasis added); *Williams*, 867 F.Supp. at 462.

In the case at bar, the court is of the opinion that defendants were not fiduciaries as that term is defined under ERISA. It is undisputed that defendants were not named fiduciaries, and did not function as the plan administrator. And the only control defendants possessed in relation to the plan was that McRae's collected the premiums from plaintiff's weekly paycheck and forwarded them to UNUM. Defendants have also submitted uncontradicted evidence that they did not engage in policy interpretation or explanation of benefit provisions. Accordingly, as the defendants' function under the plan was clerical or ministerial—not discretionary—they, as plaintiff's employer, were not fiduciaries.

*See Pohl*, 956 F.2d at 129 ("ERISA makes the existence of discretion a sine qua non of fiduciary duty"); *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir.1995); *Williams*, 867 F.Supp. at 462. Rather, UNUM, the proof shows, was the plan administrator and possessed all the discretionary authority under the plan.[5] Having not occupied the status of fiduciaries, it follows that defendants cannot be liable under ERISA for any breach of a fiduciary obligation.

■ In fact, Duckworth's position in this case is that she never received an adequate description of plan provisions, and never actually received a copy of the policy which set forth the limitations and exclusions described in the payroll deduction form.[6] Section 1024(b) of ERISA does require plan administrators to provide participants with information about the plan including a summary plan description, *Hicks v. Fleming Cos., Inc.*, 961 F.2d 537, 540 (5th Cir.1992), and participants have a cause of action under 29 U.S.C. § 1132(c)(1)(A) against plan administrators which fail to comply with a request for such information. Duckworth's claim in this case can be most readily characterized as one to recover benefits based on a violation of ERISA's disclosure requirements. It is clear, however, that UNUM, not defendants, was the plan administrator with the responsibility of satisfying these disclosure requirements. As such, Duckworth has no cause of action against the named defendants for the alleged breach of ERISA's notice provisions and defendants' motion for summary judgment is therefore well taken. *See Amat v.*

---

5. For example, the plan required that all claims be filled out on UNUM forms, to be submitted directly to UNUM, and gave UNUM the "sole and exclusive" discretion to allow or deny claims. Any appeals of denied claims were to be submitted to UNUM in writing and decisions of UNUM upon appeal were considered to be final.

6. She maintains further that even if she had gotten the policy, the policy contains nothing that would put her on notice that there was a social security coordination provision. It is plain to the court that this argument is without merit. The policy clearly contains a benefit offset provision relating to social security disability benefits.

*Seafarers Intern. Union*, 2002 WL 511540, at *4 n. 9 (E.D.La.2002) (citing 29 U.S.C. §§ 1132(c)(1)).

For the foregoing reasons, it is ordered that defendants' motion for summary judgment is granted as to all of the plaintiff's claims.

A separate judgment will be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.